## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Honorable Leda Dunn Wettre |
| | : | |
| | : | Mag. No. 18-8239 |
| v. | : | |
| | : | **AMENDED** |
| | : | **CRIMINAL COMPLAINT** |
| RAUL GARCIA PINEDA, | : | |
| a/k/a "Pimp" | : | |
| | : | |

I, Traveis Guy, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

Continued on the attached page and made a part hereof:

_____
Special Agent Traveis Guy
United States Department of Justice
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
This 26th day of October, 2018 in Newark, New Jersey

HONORABLE LEDA DUNN WETTRE    _____
UNITED STATES MAGISTRATE JUDGE    Signature of Judicial Officer

## ATTACHMENT A

### COUNT ONE
(Conspiracy to Distribute Controlled Substances)

On or about February 1, 2018 up to and including February 4, 2018, in Essex County, in the District of New Jersey and elsewhere, the defendant,

**RAUL GARCIA PINEDA,**
a/k/a "Pimp"

did knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

In violation of Title 21, United States Code, Sections 846.

## COUNT TWO
(Illegal Reentry)

On a date on or after October 18, 2013, and on or before October 29, 2018, in Los Angeles County, in the Central District of California, and elsewhere, the defendant,

## RAUL GARCIA PINEDA,
a/k/a "Pimp",

being an alien, and on or about June 10, 2013, having been convicted in the Superior Court of California, Los Angeles County, of Possession/Purchase for Sale of a Controlled Dangerous Substance, in violation of Health and Safety Code 11351, an aggravated felony, and thereafter having been deported and removed and having departed from the United States while an order of deportation was outstanding, did knowingly and voluntarily enter, attempt to enter, and was found in the United States without the Attorney General or the Secretary of Homeland Security expressly consenting to the defendant's re-applying for admission to the United States prior to his re-embarkation at a place outside the United States.

In violation of Title 8, United States Code, Sections 1326(a) and 1326(b)(2).

## ATTACHMENT B

I, Traveis Guy, am a Special Agent with the Federal Bureau of Investigation. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and photographs of the evidence. Where statements of others are related herein, they are related in substance and part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. In or around the beginning of 2014, law enforcement began investigating a drug trafficking organization ("DTO") operating in the Essex County, New Jersey area. Law enforcement has identified several members of this DTO, including: defendant Raul Garcia PINEDA, a/k/a "Pimp" ("PINEDA"); Michael HEALY, a/k/a "Shady" ("HEALY"); and at least two other co-conspirators ("co-conspirator 1" and "co-conspirator 2").

2. On or about October 16, 2015 a search was conducted on a residence in Perth Amboy, NJ ("the residence") which yielded a seizure of methylenedioxy-methamphetamine ("MDMA"), marijuana and cocaine. Co-conspirator 1 was arrested and charged with possession with the intent to distribute MDMA, a Schedule I controlled substance.

3. During the course of this investigation, co-conspirator 1 provided law enforcement with a statement in which he/she took responsibility for some of the various narcotics recovered from the residence.

4. Co-conspirator 1 stated that he/she was a major narcotics supplier for HEALY and had been doing so for several months prior to his/her arrest. Co-conspirator 1 obtained narcotics from California and facilitated their transportation to HEALY in New Jersey. After his/her arrest, co-conspirator 1 used other individuals employed by him/her in the drug distribution trade to supply narcotics to HEALY. The defendant, PINEDA, was among the individuals whom he/she had tasked with supplying HEALY.

5. On or about February 1, 2018 another member of the DTO was arrested ("co-conspirator 2"). At that time, HEALY expressed anxiety that someone from within the DTO was "ratting"[1] and this was making him

---

[1] "Ratting" is a common street term for individuals deemed to be cooperating with law enforcement and is viewed negatively by members of criminal organizations.

nervous.[2]

6. Between February 1, 2018 and February 4, 2018 PINEDA was ordered by co-conspirator 1 to supply HEALY with 2 kilograms of cocaine worth several thousands of dollars.

7. On or about February 2, 2018 co-conspirator 1 engaged in a telephone call with PINEDA that was lawfully recorded. During the course of that call, co-conspirator 1 told PINEDA, "Told you not to talk numbers with the white boy [HEALY]. I know what he can get and for what and what he can't get. You can get cool with him because I don't want you bored..." Based upon my training and experience, and based upon other information developed during the course of the investigation, co-conspirator 1 was telling PINEDA not to get involved in the financial end of the business, since PINEDA did not know how much to sell the cocaine for, but to just supply HEALY with the cocaine.

8. On or about February 4, 2018 co-conspirator 1 engaged in a telephone call with PINEDA that was lawfully recorded. During the course of that conversation, PINEDA told co-conspirator 1 that HEALY was "spooked" because of the arrest of co-conspirator 2.

9. Later that same day, during the course of another lawfully recorded telephone call, PINEDA put HEALY on the phone with co-conspirator 1 to further discuss the cocaine deal. HEALY expressed some reluctance to do business with anyone from California because of the arrest of co-conspirator 2. HEALY then stated, "Now I'm in a position where my whole shit is broken because of that...because I don't know what he's doing. So basically, I told the homeboy [PINEDA] that look if I'm helpin'... you gotta understand at this point I cannot come up off nothing. I'll do the dance, but don't ask me to come up out my pocket." Based upon my training and experience, and based upon other information developed during the course of the investigation, HEALY was discussing the cocaine deal with co-conspirator 1 and PINEDA and the price of the drugs.

10. At the end of this same conversation arrangements were made for PINEDA to fly out to New Jersey the next day to meet with HEALY and complete the deal.

11. During the course of other lawfully-recorded telephone conversations between co-conspirator 1, PINEDA and others, members of the conspiracy engaged in coded conversations about the shipment of cocaine to various addresses in New Jersey and the prices that were to be paid for that cocaine.

---

[2] A short time after this arrest two homicides related to the DTO occurred, one of which was the murder of a DEA informant.

12.     On or about January 31, 2013 PINEDA was arrested by Casola Santa Clarita Valley Police in California for committing various offenses, including but not limited to, Possession/Purchase for Sale of Narcotics, in violation of Health and Safety Code 11351 of the California Code of Criminal Justice.

13.     On or about June 10, 2013 PINEDA pled guilty in the Superior Court of California, Los Angeles County, to Possession/Purchase for Sale of Narcotics, a felony, and was subsequently sentenced to 36 months of probation.

14.     Thereafter, on or about October 18, 2013, PINEDA was removed from the United States to Mexico pursuant to an Order by an Immigration Judge.

15.     On or about December 30, 2015 PINEDA was arrested by Casola Santa Clarita Valley Police in California for committing various offenses, including but not limited to, Possession/Purchase for Sale of Narcotics, in violation of Health and Safety Code 11351 of the California Code of Criminal Justice.

16.     On or about April 4, 2016 PINEDA pled guilty in the Superior Court of California, Los Angeles County, to Possession/Purchase for Sale of Narcotics, a felony, and was subsequently sentenced to 36 months of probation.

17.     Prior to the Defendant's reentry into the United States, neither the Attorney General nor the Secretary of Homeland Security consented to the Defendant re-entering the United States. The Defendant also did not receive a waiver allowing him to re-enter the United States.